### No. 12,031.

### THE STATE OF LOUISIANA VS. G. C. MOORE.

The court adverts to the trust reposed by the law in the jury commissioners, and affirms the judicial function to afford relief when in the composition of the array of jurors the right of the accused to a fair trial is infringed.

The members of an association to aid in the prosecution of a particular class of offences, and those in sympathy with the association and who contribute money for the purposes of the organization, are not competent jurors to try an indictment for the offence of the class, to prosecute which the association is founded and the money subscribed. 4 Gray, 18; 47 An. 193.

APPEAL from the Fifth Judicial District Court for the Parish of Ouachita. *Richardson, J.*

---

*M. J. Cunningham*, Attorney General, and *J. P. Madison*, District Attorney, for Plaintiff, Appellee.

*F. P. Stubbs,* of Counsel.

*Boatner, Potts & Hudson* for Defendant, Appellant.

Argued and submitted January 22, 1896.
Opinion handed down February 10, 1896.

The opinion of the court was delivered by

MILLER, J. The defendant, convicted of retailing spirituous liquor without first obtaining a license and sentenced to pay a fine sufficient in amount to give jurisdiction to this court, prosecutes this appeal.

There is a motion to dismiss on the general ground that the record is imperfect and the special assignments that the dates of the organization of the court and of the proceedings complained of by the appellant, do not appear in the record. We would not feel authorized to dismiss an appeal for imperfections of this character not imputable to appellant, and our examination of the record fails to disclose any basis to dismiss. The motion is denied.

There are four bills of exception. One is to the overruling of the defendant's challenge to the array of jurors, based on the ground that the jury commissioners "packed," to use the word employed in the challenge, the jury, with prohibitionists prejudiced against the accused, the commissioners themselves being members of that party and of its secret executive committee. The testimony to support the challenge was directed not only to show that prohibitionists were on the panel, but that in Monroe, where the offence of violating the law relating to the sale of liquor is charged to have been committed, there was much excitement on the liquor question; that the prohibition party had been formed to aid the enforcement of the laws against the sale of liquor, or as the witness expresses it, all prohibition laws; that the party contributed money for the purpose of its organization, and that an election shortly prior to the trial of the accused had been held to determine whether the sale of liquor should be permitted within the limits of the city of Monroe. It was further proposed to show that the jury commissioners were members of the prohibition party; that they had excluded all Jews, Catholics and negroes from the jury, and composed

it of members of the prohibition party to try an offence of a class
the suppression of which was the object of the party. All this tes-
timony was excluded by the lower court on the ground of irrele-
vancy, but comes up attached to the bill of exceptions. There is
also an affidavit, in support of an application for a new trial, that
one of the jury commissioners had requested the affiant to furnish him
with the names of good prohibitionists to serve on the jury, and
there is the testimony of the commissioners that in selecting jurors
there was no design to choose prohibitionists or exclude any class.
The offer to prove assumed, and in our appreciation the testimony
shows that three of the jury commissioners were prohibitionists, two
of them members of the party, had contributed money for its pur-
poses, and one was on the executive committee; that fourteen of
the fifteen jurors drawn from Monroe were prohibitionists, and
that of the entire panel of thirty jurors drawn to try one of the
whiskey cases, as they are termed in the record, twenty-six were
members of the party organized to enforce the laws to suppress the
sale of whiskey.

The testimony indicates that which is of notoriety that the sale of
liquor, or of the restrictions to be placed on its sale, enters largely
into the public contentions of the day, and prosecutions of the char-
acter before us are apt to assume a significance as connected with
party issues. The organization of the prohibition party in Monroe
indicates that the prosecution in this case was invested with impor-
tance in its supposed relation to the prohibition policy, the subject of
contest recently at the polls in Monroe.

In all jury trials the Constitution and laws propose an impartial
jury. In cases of a political character it is especially obligatory
the jury should not represent exclusively, any shade of opinion or
sentiment apt to expose the accused to prejudice. The composition
of the jury with reference to no other test but moral fitness is
enforced in strong language in the case of Rex vs. O'Connell,
introduced in the text-books (Thompson & Merriam on Juries 140),
and in which it was claimed the jury was organized to convict, and
hence made up exclusively of those whose political affinities were
deemed unfavorable to the fair trial of the accused. Under our jury
statute jurors are not drawn from names taken indiscriminately
from the poll list, but are selected by jury commissioners appointed
by the court and by the clerk of the District Court. Act No. 89 of

1894. This method of selection substituted for previous systems doubtless, has its advantages, but the great power with which the statute invests the commissioners suggests that their duties should be discharged with the greatest circumspection. As long as jury trials subsist for the determination of criminal and civil cases, impartiality in the composition of the jury, as far as practicable, is to be exacted. On this occasion we are called on to enforce the right of a fair trial in a whiskey case, as it is termed in the record. The right is as clear in this as in any other class of cases, and the principle involved must be maintained or precedent established calculated to impair the efficiency of the jury system. Whenever, in the selection of juries, the right to a fair trial is infringed, it is for the courts to afford relief, a duty the more imperative in view of the great power of choosing juries vested in the jury commissioners. without restraint, except that afforded by the courts. We say this much in appreciation of the earnest argument supporting the challenge to the array on the grounds that the jurors composing it were almost exclusively prohibitionists, to try a case of a class in aid of the prosecution of which the prohibition party was organized, and its money subscribed, and that the jury were selected by commissioners, themselves prohibitionists, two being members of the prohibition party. On the whole case, as presented to us in testimony and argument, we should have difficulty in overruling the challenge to the array. But our view on this question arising on another bill, precludes the necessity of any further notice of the objection to the array. The defendant reserved a bill to the overruling of his challenge to one of the petit jury, who responding affirmatively to the question on behalf of the State, as to his competency, stated he had contributed money for the prosecution of the whiskey cases, including that of the defendant. The juror was, in this respect, the type in sentiment, attested by his contribution, of the entire panel, except four. The public spirit is laudable that prompts the individual contribution to aid in the prosecution of crime. When, however, the contribution is with reference to a particular class of offences, the punishment of which has become the subject of popular discussion, party organization and contest at the polls, it is natural the contributor should share the feeling created by the agitation of the subject. On the question of his competency as a juror to try the case of the ˉclass to prosecute which his

State vs. Moore.

money is given, the contribution carries the significance of the feeling that naturally prompts such action, *i. e.*, the desire of convicting that class of offenders. In the attitude of the contributor, it must seem difficult to maintain his fitness as a juror in a case the prosecution of which has enlisted his zeal so distinctly manifested by his money contribution. In the view of the law the juror must be impartial, and if his mind is not in that condition the cause of his bias, whether connected with a proper impulse, ill will or other source, is immaterial. It would seem clear that zeal to convict, though not arising from any preadjudication of the particular case, does not consist with the legal requisites of the competency of the juror. The disqualification of the juror proceeding from his connection with associations formed to aid prosecutions for particular offences and from contributions for the same purpose, has been the subject of adjudication. In a Massachusetts case the disqualification of the contributor seemed to be conceded, but if the contribution was paid, that, in the view of the court, removed the objection. But the contribution unfits the juror simply because of the bias it exhibits, and it is not easy to see how the actual payment of the promised contribution can diminish the force of the bias that itself prompts the payment. An impressive statement of the disqualifying bias under consideration occurs in another Massachusetts decision. "We deem it our duty to say, that in our judgment the members of any association, combining for the purpose of enforcing or withstanding the execution of a particular law and binding themselves to contribute money for such purpose, can not be held to be indifferent and ought not to be permitted to sit as jurors in the trial of a case in which the question is whether the defendant shall be found guilty of violating that law," is the language of that decision. 4 Gray, p. 18. See also State vs. Defee, 47 An. 193. The challenge to the juror in this case should, we think, have been sustained, the accused having exhausted his peremptory challenges and his objection to the juror well founded.

It is therefore ordered, adjudged and decreed that the sentence be set aside, a new trial ordered, the case remanded and the accused be held for that new trial.